1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANCISCO GONZALEZ,<br><br>                              Petitioner,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>                              Respondent. | Case No.: 16cv1792-MMA (KSC)<br><br>**ORDER GRANTING RESPONDENT'S MOTION TO DISMISS**<br><br> [Doc. No. 8] |

     Petitioner Francisco Gonzalez filed a "Petition for Order that Conservatee's Outstanding Medical Expenses be Paid From Medical Care Trust Established for the Care of Conservatee" in the Superior Court of California, County of San Diego. *See* Doc. No. 1. Subsequently, Respondent United States of America removed the action to this Court pursuant to 28 U.S.C. § 1442, and moved to dismiss the petition for lack of subject matter jurisdiction and failure to state a claim upon which relief may be granted. *See* Doc. Nos. 1, 8; Fed. R. Civ. P. 12(b)(1), (6). For the following reasons, the Court **GRANTS** Respondent's motion to dismiss this action, and **DISMISSES** the action without prejudice.

1

## BACKGROUND[1]

2

### A.    Petitioner's Allegations

3      According to the Petition, Luz Maria Gonzalez (hereinafter, "Mrs. Gonzalez")

4   "suffered a permanent neurologic brain injury on February 4, 20100 [sic] at Balboa Naval

5   Hospital" during childbirth, leaving her in a "comatose and vegetative" state. *See* Doc.

6   No. 1-2.  Petitioner is her husband.[2]  Thereafter, Petitioner filed a Federal Tort Claims

7   Act (FTCA) action in this district—*Luz Gonzalez v. United States of America*,

8   13CV0861-LAB (WVG).  Eventually, the parties agreed to settle the FTCA action during

9   mediation on July 30, 2014.  According to Petitioner, "[a] key component of this

10   settlement was to allow [Mrs. Gonzalez] to be transferred to a better facility for

11   continuing care." *See* Doc. No. 1-2.  On August 8, 2014, Mrs. Gonzalez was transferred

12   to this new facility, Care Meridian, purportedly in part based on the government's

13   agreement to settle the action and pay for her continuing care in some capacity.  The

14   Petition states that on September 2, 2014, Petitioner's attorney filed a motion requesting

15   the Court approve the settlement agreement.  In support of the motion, Petitioner's

16   counsel submitted a declaration in which he stated that he "was able to negotiate an

17   agreement with the U.S. Attorney that the government would pay for [Mrs. Gonzalez's]

18   care at Care Meridian . . . from August 11, 2014 forward, with such sums to be paid after

19   the government funded the settlement." *See* Doc. No. 1-2.  Petitioner states that the

20   government did not object to that statement.

21      The United States Attorney's office had reduced the settlement terms into writing

22   in a "Stipulation for Compromise and Release Federal Tort Claims Act Claims Pursuant

23   to 28 U.S.C. § 2677" (hereinafter, "Stipulation").[3]  *See* Doc. No. 1-2.  In the Stipulation,

24   the parties agreed to the creation of an "Irrevocable Reversionary Inter Vivos Grantor

25

26   _____

27   [1] Because this matter is before the Court on a motion to dismiss, the Court must accept as true the
   allegations set forth in the petition. *See Hosp. Bldg. Co. v. Trs. of Rex Hosp.*, 425 U.S. 738, 740 (1976).
   [2] Petitioner is also a co-conservator for Mrs. Gonzalez, the conservatee.

28   [3] Petitioner attached a signed copy of the Stipulation to the Petition as Exhibit 2. *See* Doc. No. 1-2.

Medical Care Trust for the Benefit of Luz Maria Gonzalez." *See* Doc. No. 1-2. The Trust names Medivest Benefit Advisors, Inc. as Administrator, and Wells Fargo Bank, N.A. as Trustee. However, according to the Petition, the Court declined to approve the settlement because a portion of the settlement payments would be paid to minors, and the minors were required to first obtain minors' compromises in Superior Court. After the minors' compromises were approved, Petitioner filed another petition for approval of the settlement agreement on September 24, 2014, which included the above mentioned Declaration, Stipulation, and Trust as exhibits. Subsequently, the magistrate judge assigned to the FTCA action submitted a report and recommendation to the assigned district judge recommending the Court approve the settlement. On October 3, 2014, the Court approved the settlement agreement.

According to the Petition, "the United States did not sign the Trust until December 28, 2014" and "did not actually fund the Trust until February 25, 2015." *See* Doc. No. 1-2. Petitioner states that "[t]he reasons for the delay can only be attributed to the fact that the Federal Government itself was involved and unfortunately, nothing moves quickly within the Federal Government." *See* Doc. No. 1-2. Petitioner asserts that "[h]ere, the outstanding issue is the payment of the ongoing routine medical services provided to [Mrs. Gonzalez] by Care Meridian for the time period from August 8, 2014 until February 15, 2015, which represents the day [Mrs. Gonzalez] was transferred to Care Meridian's care, through the last date Medivest Benefit Advisors has not made payment." *See* Doc. No. 1-2. The Trust Administrator, Medivest Benefit Advisors, denied Petitioner's request that those bills—totaling over $200,000—be paid from the Trust funds on the grounds "that the Trust language provides that dates of service prior to the establishment of the trust are not payable from trust funds." *See* Doc. No. 1-2. Petitioner contends that "this is a completely unreasonable position to take." *See* Doc. No. 1-2. Petitioner argues that the federal government should not be allowed to "take advantage of a delay that they alone caused in the first place ***and more importantly cannot claim they were unaware of the Care Meridian lien***." *See* Doc. No. 1-2. In support, Petitioner

points to an exhibit "where counsel for Petitioner in the underlying action explained the government's agreement to the Conservatee's transfer to Care Meridian where after [sic] the cost of her care would be paid out of the Trust once funded." *See* Doc. No. 1-2. The Petition also states that the Stipulation "provides that Plaintiff is to provide evidence that all liens have been paid off yet the US Attorney did not require evidence of the Care Meridian lien being paid off because the US Attorney was well aware of the agreement that this lien was to be paid from the Trust funds, once funded." *See* Doc. No. 1-2.

Under the heading "Authority for Petition," Petitioner lists three Probate Code sections. The Petition states, "Probate Code 2430 provides that a Conservator may petition the court . . . for instructions when there is doubt whether a debt should be paid." *See* Doc. No. 1-2. Also, it states, "Probate Code section 2403 . . . provides broad authority to the court to issue orders concerning the administration of a Conservatorship." *See* Doc. No. 1-2. Lastly, according to the Petition, "Probate Code section 850 et seq. provides that a Conservator may file a Petition where the Conservatee has a claim to personal property in possession of another and request that this personal property be transferred to the person entitled thereto." *See* Doc. No. 1-2.

**B.    The Stipulation and Trust Terms**[4]

Pursuant to the Stipulation, the United States agreed to pay $1,994,567.00 in cash (deemed "Upfront Cash"), $900,000.00 to purchase annuity contracts, and $2,855,433.00 to the Trust. *See Luz Gonzalez v. United States of America*, 13CV0861-LAB (WVG), Doc. No. 36, Exhibit A, Stipulation. Under the agreement, the United States was required to send a formal request to the United States Department of Treasury requesting that $5,750,000.00 "be expeditiously sent by electronic funds transfer" to the client trust account. *Id.* The United States was required to do so within three days after it obtained copies of the Stipulation and Trust signed by all parties, relevant Social Security and tax

---

[4] The Court takes judicial notice of documents filed in the FTCA action, *Luz Gonzalez v. United States of America*, 13CV0861-LAB (WVG), such as the Court-approved Stipulation and Trust, as discussed below.

1  identification numbers, court orders approving the settlement, and authorization by the

2  Attorney General or his designee.  The settlement was expressly conditioned on the

3  Attorney General's or the Attorney General's designee's approval of the settlement

4  terms, the full agreement by the parties to all terms, and on court approval of the

5  settlement.  It was also conditioned on the parties' written agreement to all terms,

6  conditions, and requirements.

7  The Stipulation states that the plaintiffs "stipulate and agree that they are legally

8  responsible for any and all past, present, and future liens and past, present, and future

9  claims for payment or reimbursement, including any past, present, and future liens or

10  claims for payment or reimbursement by any individual or entity, including an insurance

11  company, Medicaid, and Medicare, but excluding Tricare, arising from the injuries that

12  are the subject matter of this action."  *Id.*  It further states that the plaintiffs agree to

13  satisfy or resolve any such liens, and that, as of the date of signing the Stipulation, they

14  certify that they have diligently searched for outstanding liens or claims for

15  reimbursement arising out of the action.  *Id.*  Under the agreement, the plaintiffs agreed to

16  provide the United States with evidence that they have satisfied or resolved liens or

17  claims within 30 days of the date of any "past, present, or future lien[s] or claim[s] for

18  payment or reimbursement" and within 90 days "from the date the United States has paid

19  the Settlement Amount."  *Id.*  The Stipulation states that the plaintiffs and their counsel

20  agree to, through their counsel, "satisfy or resolve any and all known claims . . . before

21  distributing to the [plaintiffs] any portion of the Upfront Cash."  *Id.*

22  Finally, the Stipulation states that plaintiffs "represent that they have read,

23  reviewed and understand this Stipulation and the Reversionary Trust."  *Id.*

24  According to the Trust, its purpose is to "pay allowable benefits, as defined in . . .

25  the Trust, to or on behalf of the Beneficiary according to the terms and conditions of the

26  Trust."  *See Luz Gonzalez v. United States of America*, 13CV0861-LAB (WVG), Doc.

27  No. 36, Exhibit B, Trust.  The Trust states that "[n]o rights, obligations, duties, or

28  allowable benefits are created or payable pursuant to the Trust unless and until . . . the

Grantor has deposited with the Trustee the initial sum stated or determined by the terms of the Stipulation . . . and the Trustee has deposited said sum into a separate account opened by the Trustee in the name of the Trust." *Id.* Only once those and other conditions were satisfied, the Trust was to "be deemed established." *Id.*

In deciding whether to authorize payment of allowable benefits, the Trust requires that the Administrator rely "exclusively on the terms of the Trust." *Id.* The Trust states that "[u]nless otherwise specifically authorized . . . the Administrator shall **not** authorize (and the Trustee shall **not** pay) [for] . . . goods and services that were provided prior to the date the Trust is deemed established [or] goods and services for which an obligation to provide such goods and services was incurred prior to the date the Trust is deemed established." *Id.* The Trust also defines allowable benefits in part as those that are "incurred after the date the Trust is deemed established." *Id.*

Regarding dispute resolution, the Trust states that the parties should resolve disputes informally where possible, but "[i]f the dispute cannot be resolved informally, the Grantor, Trustee, Administrator, or Beneficiary may have the dispute resolved by a court of competent jurisdiction." *Id.* The Trust states that "any such court of competent jurisdiction shall not have the right to alter, amend, or change the terms or conditions of the Trust . . . notwithstanding any state or federal law to the contrary." *Id.* The parties agreed that "[t]he Trust is irrevocable and the terms shall not be amended, modified, altered, or changed in any respect." *Id.* Finally, the Trust states that it "is a federal contract and is to be construed according to federal law." *Id.*

### C.   Dismissal of the FTCA Action

On February 17, 2015, the parties moved the Court to dismiss the action with prejudice. *See Luz Gonzalez v. United States of America*, 13CV0861-LAB (WVG), Doc. No. 41. In their joint motion, the parties represented to the Court that "[a]ll the terms and conditions of the settlement between the Plaintiff and the United States ha[d] been satisfied." *Id.* The parties also requested that the Court not retain jurisdiction over this action "as it pertains to the United States or the settlement with the United States." *Id.*

On February 24, 2015, the Court granted the parties' joint motion to dismiss, explicitly stating that it would not retain jurisdiction to interpret or enforce the settlement agreement. *See Luz Gonzalez v. United States of America*, 13CV0861-LAB (WVG), Doc. No. 42.

## LEGAL STANDARD

### A.     Federal Rule of Civil Procedure 12(b)(1)

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). As such, "[a] federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears." *Stock West, Inc. v. Confederated Tribes*, 873 F.2d 1221, 1225 (9th Cir. 1989) (citation omitted). Without subject matter jurisdiction, a federal court is without "power" to hear or adjudicate a claim. *See Leeson v. Transamerica Disability Income Plan*, 671 F.3d 969, 975 (9th Cir. 2012) (citing *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 89 (1998)); *Kokkonen*, 511 U.S. at 377. Pursuant to Rule 12(b)(1), a party may seek dismissal of an action for lack of subject matter jurisdiction "either on the face of the pleadings or by presenting extrinsic evidence." *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003); *see also White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).

### B.     Federal Rule of Civil Procedure 12(b)(6)

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). However, plaintiffs must also plead "enough facts to state a claim to relief that is plausible on its face." Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plausibility standard thus demands more than a formulaic recitation of the elements of a cause of action, or naked assertions devoid of further factual enhancement. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Instead, the complaint "must contain allegations of underlying facts sufficient to give fair notice and to enable the

1  opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir.

2  2011).

3       In reviewing a motion to dismiss under Rule 12(b)(6), courts must assume the truth

4  of all factual allegations and must construe them in the light most favorable to the

5  nonmoving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996).

6  The court need not take legal conclusions as true merely because they are cast in the form

7  of factual allegations. *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987).

8  Similarly, "conclusory allegations of law and unwarranted inferences are not sufficient to

9  defeat a motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998).

10       In determining the propriety of a Rule 12(b)(6) dismissal, courts generally may not

11  look beyond the complaint for additional facts. *United States v. Ritchie*, 342 F.3d 903,

12  908 (9th Cir. 2003). "A court may, however, consider certain materials—documents

13  attached to the complaint, documents incorporated by reference in the complaint, or

14  matters of judicial notice—without converting the motion to dismiss into a motion for

15  summary judgment." *Id.*; *see also Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir.

16  2001). Where dismissal is appropriate, a court should grant leave to amend unless the

17  plaintiff could not possibly cure the defects in the pleading. *Knappenberger v. City of*

18  *Phoenix*, 566 F.3d 936, 942 (9th Cir. 2009).

## DISCUSSION

20       Respondent United States moves to dismiss the instant Petition on the grounds that

21  the Court lacks subject matter jurisdiction, and that Plaintiff fails to state a claim upon

22  which relief may be granted. *See* Fed. R. Civ. P. 12(b)(1), (6).

23      **A.   Judicial Notice**

24       As an initial matter, Respondent requests the Court take judicial notice of all

25  relevant documents filed in the FTCA action—*Luz Gonzalez v. United States of America*,

26  13CV0861-LAB (WVG). A court may take judicial notice of matters submitted as part

27  of a complaint, or those that are not but whose authenticity is not contested and where the

28  plaintiff's complaint relies on them. *See Lee v. City of Los Angeles*, 250 F.3d 668, 688

(9th Cir. 2001) *overruled on other grounds by Galbraith v. Cnty. Of Santa Clara*, 307 F.3d 1119, 1125–26 (9th Cir. 2002).  A court may also take judicial notice of matters of public record.  *Id.* at 688–89 (citing *Mack v. South Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986) (internal quotations omitted).  Petitioner relies on the filings in the prior FTCA action, which are public record and relevant to disposition of the issues before the Court.  Further, Petitioner does not contest the authenticity of those documents that Respondent requests the Court judicially notice.  Accordingly, the Court **GRANTS** Respondent's request for judicial notice.

### B.      Subject Matter Jurisdiction

Regarding subject matter jurisdiction, Respondent argues that the state court lacked jurisdiction over this action because the Court of Federal Claims has exclusive jurisdiction over claims arising out of express or implied contracts with the United States and seeking monetary relief in excess of $10,000.  Thus, Respondent argues, the Court did not acquire jurisdiction upon removal pursuant to the doctrine of derivative jurisdiction.  Likewise, even if Petitioner had originally filed this action here, the government argues that the Court of Federal Claims has exclusive jurisdiction.

Petitioner argues Respondent mischaracterizes his claim as a contract claim.  Petitioner states he does not allege a contract claim.  He states, "[r]ather, the United States, the grantor of the subject Reversionary Trust, has already funded the subject Reversionary Trust, and as such, Petitioner, on behalf of the Beneficiary, is merely seeking the Beneficiary's own property be appropriately disbursed."  *See* Doc. No. 12. Petitioner states that the California Probate Code "provides that a Conservator may file a petition where the Conservatee has a claim to personal property in the possession of another and request that this property be transferred to the person entitled thereto."  *See* Doc. No. 12.  Further, Petitioner argues that the United States does not own the Trust funds and thus, Petitioner is not seeking damages from the United States.

However, in reviewing the Petition, Stipulation, and Trust, the Court can only reasonably interpret Petitioner's claim as one for breach of an express or implied

contract.  This is particularly so where Petitioner does not appear to dispute that "the Trust language provides that dates of service prior to the establishment of the trust are not payable from trust funds."[5]  *See* Doc. No. 1-2.  Rather, Petitioner argues that the provision is "unreasonable" for essentially equitable reasons—mainly, that the government itself caused the delay in establishing the Trust, and that Petitioner's attorney in the FTCA action understood that money from the Trust would be used to retroactively pay Care Meridian bills.  Thus, Petitioner does not appear to rely on an argument that enforcement of the written terms of the Trust would result in the relief that Petitioner seeks.  Instead, it appears that Petitioner's grievance is that there was either an oral or an implied agreement that bills for care under Care Meridian would be paid from the Trust despite the contrary—and unambiguous—Trust language.

Insofar as Petitioner seeks monetary relief for breach of an express or implied contract, the Court does not have jurisdiction over this action as Respondent contends.  Specifically, pursuant to the Tucker Act,[6] the Court of Federal Claims has exclusive jurisdiction over claims arising out of contracts with the United States and requesting monetary relief in excess of $10,000.  *See Winchell v. U.S. Dep't of Agric.*, 790 F. Supp. 214, 216 (D. Mont. 1989), *aff'd*, 961 F.2d 1442 (9th Cir. 1992); *Mathis v. Laird*, 483 F.2d 943, 943 (9th Cir. 1973) ("The Court of Claims has been given exclusive jurisdiction for such money claims against the United States when they exceed $10,000."); 28 U.S.C. § 1491 ("the Tucker Act").  It is indisputable that a settlement agreement is a contract under the Tucker Act.  *See Green v. Hood*, No. CV-09-112-BLG-

---

[5] Also, in Petitioner's opposition brief, admits that "the express intent of the parties [was] overlooked in drafting the detailed Trust document."  *See* Doc. No. 12.

[6] Specifically, the Tucker Act states in relevant part: "The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded [] upon . . . any express or implied contract with the United States."  *See* 28 U.S.C.A. § 1491.  The Little Tucker Act states that district courts have concurrent jurisdiction with the Court of Federal Claims for the same types of claims, but only where the claims do not exceed $10,000.  *See* 28 U.S.C. § 1346 ("the Little Tucker Act").

1    RFC, 2011 WL 128792, at *1 (D. Mont. Jan. 14, 2011).  Also, a litigant cannot avoid the

2    exclusive jurisdiction of the Federal Claims Court by disguising its contract claim as

3    something else.  *See Kidwell v. Dep't of Army*, 56 F. 5d 279, 284 (D.C. Cir. 1995) (citing

4    *Van Drasek v. Lehman*, 762 F.2d 1065, 1071 n.11 (D.C. Cir. 1985)); *Mallard Auto. Grp.,*

5    *Ltd. v. United States*, 343 F. Supp. 2d 949, 956 (D. Nev. 2004) (stating that courts must

6    determine whether a claim is "at its essence" a contract claim in determining proper

7    jurisdiction under the Tucker Act).

8            Further, insofar as Petitioner petitions the Court to enforce or interpret the written

9    terms of the settlement, Petitioner is incorrect that the Court has inherent jurisdiction to

10   do so.  "[T]he Supreme Court [has] held that federal courts do not have inherent or

11   ancillary jurisdiction to enforce a settlement agreement simply because the subject of that

12   settlement was a federal lawsuit."  *See O'Connor v. Colvin*, 70 F.3d 530, 531–33 (9th

13   Cir. 1995) (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 381 (1994)).

14   Once the initial federal lawsuit is dismissed, a federal court loses subject matter

15   jurisdiction over the action and any action to enforce a settlement agreement arising out

16   of the original action requires independent grounds for federal jurisdiction.  *Id.*  In

17   *Kokkonen*, the Supreme Court stated that a federal court may retain jurisdiction over a

18   settlement agreement where the court's order of dismissal incorporates the terms of the

19   settlement agreement, or the order of dismissal explicitly states that the court retains

20   jurisdiction over the settlement.  *See id.*  "The judge's mere awareness and approval of

21   the terms of the settlement agreement do not suffice to make them part of his order."

22   *Kokkonen*, 511 U.S. at 381.  Here, Judge Burns, in his Order granting the parties' joint

23   motion to dismiss the FTCA action, explicitly stated that the Court would not retain

24   jurisdiction to interpret or enforce the settlement terms.[7]  *See Luz Gonzalez v. United*

25   *States of America*, 13CV0861-LAB (WVG), Doc. No. 42.  The Order of dismissal did not

26

27   _____

28   [7] And in fact, the parties requested Judge Burns not retain jurisdiction.  *See Luz Gonzalez v. United*
     *States of America*, 13CV0861-LAB (WVG), Doc. No. 41.

                                          -11-                    16cv1792-MMA (KSC)

1   include or incorporate by reference the terms of the settlement agreement.  Thus, the

2   Court does not have inherent authority to enforce or interpret the settlement, and did not

3   retain jurisdiction to do so.[8]

4        **C.    Petitioner's Request for Modification of the Trust**

5            As discussed above, the Petition sounds in contract.  Nowhere in the Petition does

6   Petitioner seek modification of the Trust instrument.  However, in Petitioner's opposition

7   to Respondent's motion to dismiss, Petitioner indicates that it requests the Court modify

8   the Trust.  Accordingly, the Court construes Petitioner's opposition brief as requesting

9   leave to amend the Petition to add such a request.  For the following reasons, the Court

10  concludes that it would be futile to allow Petitioner leave to amend to add a request for

11  modification of the Trust.

12           Federal Rule of Civil Procedure 15(a) states that "leave to amend shall be freely

13  given when justice so requires."  *See Schmidt v. PNC Bank, NA*, 591 F. App'x 642, 643

14  (9th Cir. 2015).  While liberally granted, "leave to amend is not automatic."  *Id.*  It is

15  within the discretion of district courts to deny leave to amend based on various factors,

16  including futility of amendment.  *See id.*; *Star Patrol Enterprises, Inc. v. Saban Entm't,*

17  *Inc.*, 129 F.3d 127 (9th Cir. 1997).  A court may deny leave to amend where it considers

18  proposed amendments and finds that they would not cure the deficiencies of the

19  complaint.  *See Ward v. Gen. Motors Nat. Ret. Serv.*, 112 F.3d 518 (9th Cir. 1997);

20  *Yamauchi v. Cotterman*, 84 F. Supp. 3d 993, 1020 (N.D. Cal. 2015) (considering

21  additional facts proffered by a plaintiff in an effort to show that they could cure

22  deficiencies).

23           Petitioner cites to the Uniform Trust Code and the Restatement of Trusts to argue

24  that he has stated a claim upon which relief may be granted, and that the Court should

25  _____

26  [8] Even if the Court had retained jurisdiction to enforce the settlement agreement, the Court would likely
    only have jurisdiction to enforce the agreement based on its written terms and not any "alleged oral

27  promises outside the settlement agreement."  *See Saints v. Winter*, No. CIV 05CV0806 JAH RBB, 2007
    WL 2481514, at *4–5 (S.D. Cal. Aug. 29, 2007).

28

1    modify the Trust.  However, neither the Uniform Trust Code nor the Restatement of

2    Trusts applies to this case.  Importantly, the Trust in the instant case is not a donative

3    trust, but rather one arising out of a settlement agreement.  Because consideration was

4    involved in the Trust's creation, its reformation "is dictated by principles of contract

5    law."  *See Amara v. CIGNA Corp.*, 775 F.3d 510, 524–25 (2d Cir. 2014); Restatement

6    (Third) of Trusts § 62, cmt. a ("Where consideration is involved in the creation of a trust,

7    the rules governing transfers for value and contracts are applicable."); *Bilafer v. Bilafer*,

8    161 Cal. App. 4th 363, 371 (2008) (citing Restatement (Third) of Trusts § 62, cmt. a).

9          Thus, as discussed above, Petitioner's claim is only properly before the Court of

10   Federal Claims.  Although the Court of Federal Claims cannot generally provide solely

11   equitable relief, it has exclusive jurisdiction where a claim in equity is merely incidental

12   to a claim for monetary relief.  *See Hartle v. United States*, 18 Cl. Ct. 479, 484 (1989)

13   (stating that the Court of Federal Claims "can exercise equitable power, *e.g.*, rescission

14   and reformation of a contract, when the exercise of that power is incidental to the court's

15   general jurisdictional authority to render money judgments"); *see also Franklin-Mason v.*

16   *Penn*, 616 F. Supp. 2d 97, 100 (D.D.C. 2009) (stating that the Court of Federal Claims

17   has exclusive jurisdiction over claims that "explicitly or in essence seek[] money

18   damages in excess of $10,000") (collecting cases).  Petitioner's claim is predominantly a

19   claim for a money judgment.  To illustrate, in his Petition, Petitioner states that he seeks

20   an order "direct[ing] Trustee . . . to make payment of $210,225.00 to Care Meridian,

21   LLC."  *See* Doc. No. 1-2.  In his opposition brief, Petitioner states that he "does not seek

22   to significantly alter or modify the trust such that *any other* benefit, cost or expense

23   would be affected . . . [but rather,] [t]he relief Petitioner seeks relates to a one-time

24   expense, and shall have no bearing on any future expenditure."  *See* Doc. No. 12; *see also*

25   *Johnson v. Potter*, No. CIV. L-09-319, 2011 WL 5375052, at *2 (D. Md. Nov. 7, 2011)

26   (finding exclusive jurisdiction in the Court of Federal Claims where the plaintiff sought

27   specific performance "only insofar as she demand[ed] monetary payment explicitly called

28   for by the terms of the contract"); *Kidwell*, 56 F. 3d at 284 (citing *Van Drasek*, 762 F.2d

at 1071 n.11) ("[J]urisdiction under the Tucker Act cannot be avoided by . . . disguising a money claim as a claim requesting a form of equitable relief."); *Amoco Prod. Co. v. Hodel*, 815 F.2d 352, 361 (5th Cir. 1987) ("It is clear, both in this circuit and elsewhere, that a plaintiff cannot avoid Tucker Act jurisdiction simply by characterizing an action as equitable in nature.") (stating that courts must "'pierce' the pleadings so that artful pleading does not undercut the jurisdiction of the Claims Court"); *see Rowe v. United States*, 633 F.2d 799, 802 (9th Cir. 1980).

For the foregoing reasons, the Court declines to allow Petitioner leave to amend to add a request that the Court modify or reform the Trust. As discussed above, such a request would be futile because the Court would lack jurisdiction over this action even if such a request were pleaded in the Petition.

## CONCLUSION

Accordingly, the Court **GRANTS** Respondent's motion to dismiss, and **DISMISSES** the Petition without prejudice and without leave to amend. The Clerk of Court is instructed to enter judgment accordingly and close this action.

**IT IS SO ORDERED.**

Dated: March 22, 2017

Hon. Michael M. Anello
United States District Judge